IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ELDON LAMAR WASHINGTON,** :
    **Petitioner,** :
                                      : No. 1:21-cv-211
**v.** :
                                      : (Judge Rambo)
**WARDEN OF USP-CANAAN,** :
    **Respondent** :

## **MEMORANDUM**

On February 5, 2021, *pro se* Petitioner Eldon Lamar Washington ("Petitioner"), who is currently incarcerated at the United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner maintains that the Bureau of Prisons ("BOP") is violating his Eighth Amendment rights by failing to provide safe living conditions during the COVID-19 pandemic. (*Id.*) Petitioner asserts that he is "at special risk of infection and is less able to participate in proactive measures to stay safe." (Doc. No. 1 at 2.) He alleges that his mental health has also deteriorated. (*Id.* at 4.) As relief, Petitioner seeks release. (*Id.*) Following an Order to show cause (Doc. No. 7), Respondent filed a response on March 5, 2021 (Doc. No. 12). Upon review of Petitioner's submissions and Respondent's response, the Court will deny Petitioner's § 2241 petition.

I.   **BACKGROUND**

    A.   **The BOP's Response to COVID-19**

To mitigate the spread of COVID-19, the BOP has modified its operations nationally. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "BOP COVID-19 Modified Operations Plan" hyperlink) (last accessed Mar. 22, 2021 11:13 a.m.). These modified operations are to provide for limited inmate movement in order to "prevent congregate gathering and maximize social distancing." *Id.* The BOP has implemented enhanced health screenings of staff at all locations. *Id.* Moreover, all newly admitted inmates are screened for COVID-19, including a symptom screen, temperature check, and an approved viral PCR test. *Id.* Inmates who are asymptomatic and/or test positive are placed in medical isolation; inmates who are asymptomatic and test negative are placed in quarantine. *Id.* Inmates remain in isolation until they test negative or are cleared by medical staff. *Id.* All inmates are tested again before transfer to a new facility. *Id.*

The BOP is also requiring that contractor access be restricted to those performing essential services, religious worship services, and necessary maintenance. *Id.* All contractors "must undergo a COVID-19 screening and temperature check prior to entry." *Id.* All volunteer visits have been suspended

"unless approved by the Deputy Director of the BOP." *Id.* Inmate movement "in small numbers" is authorized for commissary, laundry, showers three (3) times per week, and telephone and TRULINCS access. *Id.*

    **B.**    **Use of Home Confinement by the BOP**

The BOP has exclusive discretion to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(a). Pursuant to this authority, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*

On March 26, 2020, the Attorney General issued a Memorandum encouraging the BOP to prioritize home confinement, as appropriate, in response to the COVID-19 pandemic. *See Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed Mar. 22, 2021 11:14 a.m.). To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for

3

home confinement," and the following non-exhaustive discretionary factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with Centers for Disease Control ("CDC") guidelines: (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate "has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety"); and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community." *Id.*

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was implemented, authorizing the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19 pandemic. CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). On April 3, 2020, the Attorney General issued a memorandum authorizing the Director of the BOP to maximize the use of home confinement for appropriate inmates held at facilities where the Director determines COVID-19 has materially affected operations. *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, https://www.justice.gov/file/1266661/download (last

accessed Mar. 22, 2021 11:14 a.m.). This memorandum increased the number of inmates to be assessed for home confinement and directed that the BOP prioritize the most vulnerable inmates at the most affected facilities. *Id.* The memorandum stressed that the BOP should "continue making the careful, individualized determinations BOP makes in the typical case" to remain faithful to its duty to protect the public. *Id.* As of March 22, 2021, the BOP has 7,524 inmates on home confinement, with a total number of 23,062 inmates being placed on home confinement from March 26, 2020 to the present. *COVID-19 Home Confinement Information*, https://www.bop.gov/coronavirus (last accessed Mar. 22, 2021 11:14 a.m.).

    **C.**    **USP Canaan's Response to COVID-19**

USP Canaan "maintains an abundant supply of COVID-19 tests, and both staff and inmates are tested for COVID-19 regularly." (Doc. No. 12-1 at 2.) Inmates are still permitted access to commissary, laundry, showers, telephones, and computers, but staff at USP Canaan have taken preventative measures "that assist in preventing the spread of COVID-19, to include limited group gatherings, social distancing where possible, and limited movement of inmates among BOP facilities." (*Id.*) Staff and inmates are issued face masks, which must be worn in public areas and when social distancing is difficult to achieve. (*Id.*) Staff and

inmates are "regularly screened for a temperature exceeding 100.4 degrees or overt respiratory symptoms." (*Id.*) Those inmates who are symptomatic or have a temperature are immediately isolated and tested using an Abbott ID NOW test. (*Id.*) Inmates with negative Abbott ID tests receive PCR nasal swab tests and remain in isolation until the results are received. (*Id.*) Inmates with positive Abbott ID tests remain isolated. (*Id.*) Inmates who test positive remain in isolation "until they test negative or medical staff, pursuant to the CDC criteria for a release from isolation, clear the inmate from isolation." (*Id.*)

Contact tracing is performed when a staff member or inmate has a confirmed case of COVID-19. (*Id.* at 3.) "Close contacts are identified, assessed for symptoms, and administered an Abbott ID NOW or PCR nasal swab test." (*Id.*) "Inmates who display symptoms are tested and isolated, and asymptomatic inmates are tested and placed in exposure quarantine." (*Id.*) All inmates who go through intake, discharge, and transfer are tested, and "all new BOP admissions are placed in a fourteen day quarantine regardless of their test result." (*Id.*) Inmates who spend an extended period of time in crowded settings, "such as an emergency department, waiting area, overnight hospitalization, in court, a furlough or work release," are tested upon return to USP Canaan. (*Id.*) Finally, "separate housing units are not permitted to commingle, sanitation efforts continue, and staff are

6

assigned to quarterly posts without any movement between the USP and satellite camp (with the exception of overtime, medical coverage, and institutional emergencies) in order to prevent any cross-contamination." (*Id.*) As of March 22, 2021, there were five (5) inmate and five (5) staff COVID-19 cases at USP Canaan. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for USPO Canaan) (last accessed Mar. 22, 2021 11:15 a.m.). 305 inmates and sixty-four (64) staff members have recovered. *Id.*

### D. Facts Regarding Petitioner

Petitioner is currently serving a sentence of thirty-three (33) months' incarceration imposed by the United States District Court for the Eastern District of Kentucky after his supervised release was revoked. (Doc. No. 12-1 at 8.) He has not filed any administrative remedies that pertain to release because of COVID-19. (*Id.* at 1, 10-18.) On November 2, 2020, Petitioner submitted a request for a compassionate release, stating that he was at risk for contracting COVID-19 because of high blood pressure, heart palpitations, and anxiety. (*Id.* at 19.) Warden Bradley denied Petitioner's request on November 4, 2020, noting that Petitioner has a history of violence and is classified as a high security inmate. (*Id.*)

Warden Bradley also noted that Petitioner's medical conditions did not meet the compassionate release criteria. (*Id.*)

Petitioner tested positive for COVID-19 on January 9, 2021. (*Id.* at 3, 27.) Medical staff noted that he was asymptomatic, and Petitioner denied any cough, shortness of breath, or GI symptoms. (*Id.*) He was placed in isolation. (*Id.*) On January 11, 2021, a Physician's Assistant conducted a clinical encounter and noted that Petitioner remained in isolation. (*Id.* at 4, 26.) Petitioner continued to deny any shortness of breath, cough, body aches, or GI symptoms. (*Id.*) On January 19, 2021, Petitioner was released from isolation and continued to deny any COVID-19 complaints. (*Id.* at 4, 24.)

On February 18, 2021, Petitioner went to the health services department "complaining of a rash on his forehead and face, dryness on his back, and blurry vision." (*Id.* at 4, 21-22.) Dr. Sood advised him to continue with Vitamin A&D ointment on his back, made a referral for a psychology consult, and discussed the need for Petitioner to lose weight "through a low sugar, low sodium diet as well as exercise." (*Id.*) Dr. Sood "also created a new consult request for [Petitioner] to see an optometrist with a target date of April 19, 2021." (*Id.*) That same day, Dr. Sommer, the Northeast Regional Medical Director, performed a review of Petitioner's chart and "noted that the only eye issues reported with COVID-19 is

8

conjunctivitis, which occurs rarely." (*Id.* at 4, 20.)  Petitioner has not complained about conjunctivitis. (*Id.* at 4.)

## II.   DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; (2) BOP decisions concerning home confinement are not subject to judicial review; (3) Petitioner is not a priority candidate for home confinement; and (4) Petitioner cannot establish an Eighth Amendment violation.[1] (Doc. No. 12 at 2-3.)  The Court considers each argument in turn.

### A.   Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a

---

[1] The United States Court of Appeals for the Third Circuit recently concluded that immigration detainees could proceed under § 2241 to challenge allegedly unconstitutional conditions of confinement due to the COVID-19 pandemic. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020).  The Third Circuit cautioned that it was "not creating a garden variety cause of action." *Id.* at 324.  In light of *Hope*, the Court "will assume, *without deciding*, that it has jurisdiction under § 2241 to consider a federal prisoner's COVID-19 related conditions of confinement claim." *Byrne v. Ortiz*, No. 20-12268 (RBK), 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020).

9

factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

This Court has recognized that a § 2241 petitioner seeking release to home confinement due to the COVID-19 pandemic must first exhaust his administrative remedies. *See Gottstein v. Finley*, No. 3:20-cv-935, 2020 WL 3078028, at *3-4 (M.D. Pa. June 10, 2020). To do so, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). An inmate must then file a request with the Warden and then file an appeal to the BOP's Regional Director within twenty (20) days of the date of the

Warden's response. 28 C.F.R. §§ 542.14 & 542.15(a). If his appeal to the Regional Director is denied, the inmate must appeal that decision to the BOP's General Counsel within thirty (30) days. *Id.* The appeal to the General Counsel is the final level of administrative review. *Id.*

Petitioner asserts that his administrative remedies were rendered unavailable because Counselor Roberts twice failed to give him a BP-8 form to pursue informal resolution. (Doc. No. 4.) Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860.

11

The Court recognizes that the Third Circuit recently reiterated that "strict compliance with . . . exhaustion requirement[s] takes on added—and critical—importance" during the COVID-19 pandemic "[g]iven the BOP's shared desire for a safe and healthy prison environment." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Based on this principle, courts within the Third Circuit have routinely dismissed unexhausted requests for home confinement due to the pandemic. *See, e.g.*, *Adams v. Trate*, No. 1:20-cv-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020); *Gottstein*, 2020 WL 3078028, at *3; *Jackson v. White*, No. 3:20-cv-919, 2020 WL 3036075, at *5-7 (M.D. Pa. June 5, 2020); *Cordaro v. Finley*, 3:10-cr-75, 2020 WL 2084960, at *4 (M.D. Pa. Apr. 30, 2020). Petitioner, however, has indicated that staff members refused to provide him BP-8 forms to pursue informal resolution, which is a prerequisite to filing an administrative remedy. The Third Circuit has recognized that refusing to provide appropriate grievance forms in response to an inmate's inquiries for such renders an administrative remedy system unavailable. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Given Petitioner's representation, the Court declines to dismiss his § 2241 petition for failure to exhaust administrative remedies and will address the merits of his petition below.

### B. Merits of Petitioner's § 2241 Petition

#### 1. Home Confinement Request[2]

Even if Petitioner had exhausted his request for home confinement, the Court could not grant his request because "the CARES Act provides the discretion for determining early home confinement release solely to the BOP." *United States v. Mathews*, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020); *see also Adams*, 2020 WL 7337806, at *2 (collecting cases); *United States v. Robinson*, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020) (noting that "the Court does not have the authority to grant [a request for home confinement] in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director"). Attorney General Barr "used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda." *Aigebkaen v. Warden*, No. 20-5732 (NLH), 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020).

The plain text of the CARES Act grants additional discretion to the Attorney General and the BOP; it does not require the BOP to release all at-risk, non-violent

---

[2] The Court notes that Warden Bradley denied Petitioner's request for compassionate release on November 4, 2020. (Doc. No. 12-1 at 19.) This Court, however, has no authority to consider a request for compassionate release in a § 2241 petition. *See Alexis v. Ortiz*, No. 19-1085, 2019 WL 2367034, at *2 (D.N.J. June 5, 2019). Petitioner must seek such relief from his sentencing court. *Id.*

13

inmates on home confinement. Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all [the Court] must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The record reflects that Petitioner has a HIGH Security Classification and a HIGH recidivism risk PATTERN score. (Doc. No. 12-1 at 6.) Consistent with the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement. Thus, Petitioner cannot demonstrate that the BOP's interpretation of the CARES Act is unreasonable as applied to him. The Court, therefore, cannot grant Petitioner's request to be released on home confinement.

      **2.**     **Eighth Amendment Claim**

In his § 2241 petition, Petitioner asserts, in a conclusory fashion, that the conditions of his confinement at USP Canaan violate the Eighth Amendment. (Doc. No. 1.) Petitioner maintains that social distancing is impossible for incarcerated individuals. (*Id.* at 2.) He also suggests that officers do not wear masks and are not tested before coming to work. (*Id.*) Petitioner asserts that his

health conditions, combined with USP Canaan's failure to take adequate precautions, caused him to contract COVID-19. (*Id.* at 2-4.) He also suggests that his mental health has deteriorated. (*Id.*)

The Eighth Amendment guarantees a prisoner's right to be free from "cruel and unusual punishments" while in custody. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII)). An Eighth Amendment claim challenging conditions of confinement has two elements: (1) the deprivation asserted must be "sufficiently serious" to violate the Constitution, and (2) the prison official or officials responsible for the deprivation "must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second element can be proven by establishing that prison officials "acted with deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights." *Id.* (citation omitted). Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

The Court "recognize[s] that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No. 1:20-cv-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020). However, the "inability to practice social distancing is not, in and of itself sufficiently serious to implicate a violation of the Eighth Amendment." *See Engelund v. Doll*, No. 4:20-cv-604, 2020 WL 1974389, at *9 (M.D. Pa. Apr. 4, 2020). Nothing in the record suggests that USP Canaan is not complying with the modified parameters of operation set forth *supra*. While it is unfortunate that Petitioner recently contracted COVID-19, the record reflects that he remained asymptomatic and was released from isolation after the ten (10)-day isolation period. Moreover, Petitioner has provided no evidence that his mental health is deteriorating. Furthermore, the record reflects that Petitioner received medical treatment for other symptoms he experienced after contracting COVID-19.

Furthermore, contrary to Petitioner's assertion, USP Canaan has been testing for the COVID-19 virus. As of March 22, 2021, 936 inmates have been tested, 355 with positive results. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "Learn more about the data and view individual facility stats" hyperlink) (last accessed Mar. 22, 2021 11:16 a.m.) Staff

members have also been tested. *See id.* (select "Full breakdown and additional details" hyperlink and search for USP Canaan) (last accessed Mar. 22, 2021 11:16 a.m.). Finally, as of March 22, 2021, 149 staff members and 339 inmates at USP Canaan have been fully vaccinated. *See id.* (select "Learn more about vaccinations and view individual facilities stats" hyperlink) (last accessed Mar. 22, 2021 11:16 a.m.). Thus, even when considering Petitioner's underlying health conditions, he has neither identified a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation nor has he established that officials at USP Canaan have acted with deliberate indifference to his health or safety. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (noting that "a failure to eliminate all risk [does not] establish that the Government [has been] deliberately to [inmates'] serious medical needs"), *Rodriguez-Francisco*, 2020 WL 4260766, at *5 (concluding that habeas relief was not warranted because "officials [were] well aware of the COVID-19 pandemic and ha[d] taken numerous steps to mitigate the risk of infection and spread in their facility"). "[Petitioner] has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety or prisoners during this unprecedented worldwide pandemic." *Id.* at *3. Petitioner, therefore, is not entitled to relief pursuant to § 2241.

## III.  CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Petitioner's motion for discovery and a telephonic hearing (Doc. No. 13) will be denied.[3]  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: March 24, 2021

---

[3] Petitioner seeks discovery to prove that the Warden of USP Canaan "is not the actual reviewer and/or denier of [his] request for compassionate release, but it was in fact [his] unit manager in violation of Petitioner's due process rights." (Doc. No. 13 at 1.)  Petitioner requests a telephonic hearing to present testimony from his Unit Manager as to this, as well as testimony regarding Counselor B. Roberts' "refusal to provide inmates with administrative remedy forms and/or destruction of the same." (*Id.*)  Such information is not pertinent to the Court's resolution of Petitioner's § 2241 petition.  His motion, therefore, will be denied.